# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**BIG CHIEF PLANT SERVICES, LLC,**

    Plaintiff/Counter-defendant,

v.                                                                                                                                                                                                                                               No. 18-cv-1226 SMV/CG

**PANHANDLE MAINTENANCE, LLC,**

    Defendant/Counterclaimant/Third-Party Plaintiff,

v.

**3BEAR DELAWARE OPERATING-NM, LLC,**

    Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING
## THIRD-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Third-Party Defendant 3Bear Delaware Operating-NM, LLC's ("3Bear") Motion for Summary Judgment and Memorandum in Support of the Motion, filed on August 15, 2019. [Docs. 67, 68]. Third-Party Plaintiff Panhandle Maintenance, LLC ("Panhandle") responded on August 28, 2019. [Doc. 77]. 3Bear replied on September 11, 2019. [Doc. 82]. Plaintiff Big Chief Plant Services, LLC ("Big Chief") never responded, and no response from it is needed to decide the instant Motion. The Court held oral argument on the Motion on October 4, 2019. [Doc. 95] (clerk's minutes). The parties consented to have the undersigned conduct dispositive proceedings and enter final judgment in this matter. [Doc. 17]. The Court has considered the briefing, the relevant portions of the record, the relevant law, and the oral argument. Being otherwise fully advised in the premises, 3Bear's Motion is GRANTED.

# BACKGROUND[1]

3Bear hired Big Chief as its general contractor to perform services on its property in Lea County, New Mexico. [Doc. 68] at 2. Big Chief, in turn, hired Panhandle as its painting subcontractor. [Doc. 8] at 5. Panhandle invoiced Big Chief for its services, but Big Chief withheld a portion of the amount due because it believes that Panhandle overbilled it. [Doc. 8] at 5–6. In response, Panhandle filed a mechanics' and materialmen's lien on 3Bear's property. *Id.* at 6; *see* [Doc. 18] at 13–15. The County Clerk of Lea County recorded the lien. [Doc. 18] at 13.

Big Chief sued Panhandle in New Mexico state court on November 20, 2018, asserting a number of claims arising from Panhandle's alleged overbilling. [Doc. 8] at 4, 8–10. Big Chief also moved in state court to cancel Panhandle's lien on 3Bear's property. [Doc. 18] at 1. Panhandle removed this action to federal court on December 27, 2018. [Doc. 1] at 4. Panhandle also filed its Counterclaim against Big Chief and its Third-Party Complaint against 3Bear on December 27, 2018. [Doc. 3]. Panhandle filed an Amended Notice of Removal on January 9, 2019. [Doc. 8]. The Court cancelled Panhandle's lien on 3Bear's property on February 4, 2019. [Doc. 20] at 4.

Panhandle moved to amend its Answer, Counterclaim, and Third-Party Complaint on May 14, 2019, [Doc. 52], which the Court granted, [Doc. 59]. In its Amended Counterclaim, Panhandle asserts a breach-of-contract claim against Big Chief. [Doc. 60] at 8–9. Panhandle alleges that, by withholding partial payment for Panhandle's painting services, Big Chief breached its contract with Panhandle. *Id.* In its Amended Third-Party Complaint, Panhandle alleges it

---

[1] As 3Bear moves for summary judgment, these facts are taken in the light most favorable to Panhandle. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

provided services that improved 3Bear's property. *Id.* at 12–13. Panhandle alleges that 3Bear has been unjustly enriched because Panhandle never received payment for part of its services. *Id.*

On August 15, 2019, 3Bear filed the instant Motion for Summary Judgment. [Doc. 67]. It argues that, under New Mexico law, Panhandle cannot simultaneously maintain both a breach-of-contract claim against Big Chief and an unjust-enrichment claim against 3Bear. *Id.* at 1.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit." *Laul v. Los Alamos Nat'l Labs.*, 765 F. App'x 434, 440 (10th Cir. 2019) (quoting *DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1036 (10th Cir. 2017)). A court must deny summary judgment if a reasonable factfinder could find for the non-movants. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When applying this standard, the court must construe the evidence in the light most favorable to the non-moving party. *Tolan*, 572 U.S. at 657. The party moving for summary judgment has the initial burden of establishing that there is an absence of evidence supporting the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If the movant meets this burden, the parties opposing summary judgment must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1526 n.11 (10th Cir. 1992).

# ANALYSIS

To prevail on an unjust-enrichment claim, "one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, ¶ 11, 129 N.M. 200. "The hornbook rule [is] that quasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue. Courts . . . have stated their unwillingness to resort to the doctrine of unjust enrichment to override a contractual [] provision." *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1117 (10th Cir. 2005) (alterations in original) (quoting *Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Sapulpa*, 130 F.3d 950, 957 (10th Cir. 1997)) (applying New Mexico law). In particular, "New Mexico courts disfavor subcontractor suits against property owners" in equity when a contract between the general contractor and the subcontractor governs the dispute. *Abraham v. WPX Energy Prod., LLC*, 20 F. Supp. 3d 1244, 1276 (D.N.M. 2014). New Mexico courts have adopted this disfavor because "equity will not act if there is a complete and adequate remedy at law." *Dydek v. Dydek*, 2012-NMCA-088, ¶ 53, 288 P.3d 872 (quoiting *Sims v. Sims*, 1996-NMSC-078, ¶ 28, 122 N.M. 618). Therefore, when an enforceable contract governs the parties' relationship, a party cannot recover damages in unjust enrichment for wrongs controlled by the contract. *A Mountain Prof'l Constr., LLC v. Arborunda, Inc.*, No. 17-cv-1158 RB/CG, 2018 WL 3336425, at *7 (D.N.M. July 6, 2018); *Acevedo v. Sw. Airlines Co.*, No. 16-cv-0024 MV/LF, 2018 WL 2392215, at *12 (D.N.M. May 25, 2018).

Yet, "under New Mexico law, the existence of a contract with a different party does not automatically bar the unjust[-]enrichment claim." *Abraham*, 20 F. Supp. 3d at 1276. "[T]he

plaintiff cannot pursue the unjust[-]enrichment claim unless there is something—bankruptcy, statutes—prohibiting the plaintiff from pursuing the contract claim." *Id.* When "there appears to be no dispute as to whether or not the [contract is valid]," "unjust[-]enrichment/quantum meruit claims are not permissible." *Huntingford v. Pharm. Corp. of Am.*, No. 17-cv-1210 RB/LF, 2019 WL 78783, at *5 (D.N.M. Jan. 2, 2019); *see Armijo v. FedEx Ground Package Sys., Inc.*, 285 F. Supp. 3d 1209, 1217 (D.N.M. 2018) ("While there are at least two cases where the New Mexico Supreme Court allowed an unjust enrichment claim where the two parties were in privity of contract, the contracts in both cases were 'concededly unenforceable.'" (quoting *Steadfast Ins. Co. v. Legacy Safety & Consulting, LLC*, No. 15-cv-0218 WJ/CG, 2015 WL 12803775, at *4 (D.N.M. June 25, 2015))).

The issue in this Motion is whether a subcontractor (Panhandle) may bring both a breach-of-contract claim against the general contractor (Big Chief) and an unjust-enrichment claim against the property owner (3Bear) without showing that it lacks a legal remedy against the general contractor. 3Bear argues that Panhandle cannot do so because Panhandle "has a viable claim for breach of contract against Big Chief, [and] Panhandle is in fact prosecuting the claim." [Doc. 68] at 4. Panhandle disputes 3Bear's Motion for Summary Judgment on only one ground. It argues that New Mexico law allows a subcontractor to recover against the property owner when two factors exist: (1) the subcontractor lost its lien encumbering the property at issue, and (2) the property owner failed to pay the general contractor substantially in full. [Doc. 77] at 3. Panhandle therefore argues that because it lost its lien on 3Bear's property, and 3Bear has not shown that it had paid Big Chief substantially in full, 3Bear has not met its burden to show that no genuine issue of material fact exists as to whether it had been unjustly enriched. *Id.* at 5. Because the Court

does not agree that this two-factor test applies to the issue in this Motion, it rejects Panhandle's argument and will grant summary judgment in favor of 3Bear.

In *Ontiveros Insulation Co. v. Sanchez*, a case relied upon by Panhandle, subcontractors sued two homeowners for unjust enrichment. 2000-NMCA-051, ¶ 1. The subcontractors and the property owners were not in privity of contract. *Id.* Instead, Parker—the general contractor—hired the subcontractors to furnish services and materials for the construction of two homes. *Id.* ¶ 2. Prior to completing construction, but after the subcontractors had provided the services and materials, Parker declared bankruptcy. *Id.* ¶ 3. Parker had not yet paid the subcontractors for their services and materials. *Id.* The homeowners had paid Parker for 41% and 62% of the contract price, respectively. *Id.* The subcontractors then filed liens on the homes. *Id.* ¶ 5. However, after the homeowners foreclosed on the homes and exercised their rights of redemption, they reclaimed the properties clear of any liens. *Id.* The subcontractors sought relief from Parker, but their claims were discharged in his bankruptcy proceedings. *Id.* With no other option, the subcontractors filed an unjust-enrichment lawsuit against the homeowners for the value of the labor and materials added to the homes. *Id.* ¶ 6. The district court entered judgment in favor of the subcontractors, finding that the homeowners had not paid for a substantial amount of the services provided and, therefore, the homeowners were unjustly enriched. *See id.* ¶¶ 7, 15.

The New Mexico Court of Appeals affirmed, noting that, though subcontractor suits against property owners "are generally not favored," *id.* ¶ 12, such general disfavor did not apply in the circumstances of that case. *Id.* ¶ 13. The homeowners argued that, because they paid a substantial portion of the contract price—at least 41% of it—to the general contractor, they paid for the conferred benefit, and therefore no enrichment or unjust enrichment occurred. *Id.* ¶¶ 15–

17. The Court of Appeals rejected this argument, finding no abuse of discretion in the lower court's finding that payment of 41% or 62% of the contract price was not "very substantial." *Id.* ¶ 18. The court then noted that it was proper for the subcontractors to sue the homeowners, rather than Parker (the party with whom the subcontractors were in privity of contract), because "the subcontractors pursued all possible remedies before turning to the present action. Indeed, but for Homeowners' . . . foreclosure . . . Subcontractors could claim an adequate remedy at law without resort to equity." *Id.* ¶ 21. Given that they attempted to recover through the liens and the actions against Parker, the subcontractors could not "bear the blame for Parker's bankruptcy." *Id.*

*Ontiveros* therefore suggests that, when a subcontractor has lost its lien and exhausted other remedies against the general contractor, it may pursue a claim of unjust enrichment against the property owner. Though *Ontiveros* also held that a property owner is unjustly enriched when it does not pay substantially in full for the services at issue, such a requirement did not affect whether the subcontractors could, in the first instance, sue the homeowners for unjust enrichment. Whether the property owner paid the general contractor for the services merely represented an analysis of the second prong of the prima facie case: whether the defendant had retained a benefit in a way that would be unjust. *See id.* ¶ 17.

Similarly, the Tenth Circuit, applying New Mexico law, has permitted a sub-subcontractor to recover in quantum meruit[2] against a general contractor because the subcontractor with which it was in privity of contract declared bankruptcy. In *United States ex rel. Sunworks Division of Sun Collector Corp. v. Insurance Co. of North America*, a sub-subcontractor (Sunworks)

---

[2] New Mexico law equates unjust-enrichment claims with quantum meruit claims. *See Ontiveros*, 2000-NMCA-051, ¶ 11.

contracted with Welco (a subcontractor) to provide solar collectors for the Army Corps of Engineers. 695 F.2d 455, 456 (10th Cir. 1982). The Army Corps of Engineers hired Fortec as the general contractor. *Id.* When Sunworks presented Welco with the bill, however, Welco declined to pay Sunworks and later filed for bankruptcy. *Id.* at 457. Sunworks then sued Fortec in quantum meruit for the value of the solar collectors it had provided. *Id.* at 456. It also sued Fortec under the Miller Act.[3] *Id.* The district court dismissed Sunworks' quantum meruit claim, holding that the Miller Act provided its exclusive remedy. *Id.* at 457.

The Tenth Circuit reversed, holding that the Miller Act "is not an exclusive remedy." *Id.* at 458. It noted that Congress designed the Miller Act to provide an alternate remedy to a mechanic's lien, which could not attach to government property. *Id.* at 457. "Where neither a valid Miller Act nor mechanic's lien claim exists, other statutory or common[-]law remedies may be available to an unpaid supplier." *Id.* at 458. Because Fortec used the solar collectors to complete the project, the Army Corps of Engineers paid it for its services, and never paid Welco or Sunworks for the solar collectors, Fortec was unjustly enriched. *Id.* Like Parker in *Ontiveros*, Sunworks could not recover against the party with which it was in privity of contract because Welco declared bankruptcy. Without a lien or a breach-of-contract remedy, New Mexico law allowed Sunworks and the subcontractors in *Ontiveros* to pursue unjust-enrichment claims.

Panhandle quotes the penultimate sentence in the final paragraph of *Sunworks* to argue that "New Mexico specifically acknowledged that a subcontractor who has lost his mechanic's lien

---

[3] The Miller Act requires a contractor to post a surety bond in order to protect the person(s) supplying labor or materials in a government construction project. *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 118 (1974). The Miller Act allows a person who has not been paid in full to sue if the person has provided labor or materials in carrying out work provided for in a contract for which the bond is furnished. *Id.*; *see* 40 U.S.C. § 270b (2018).

claim against a property owner may have a claim in quantum meruit where the owner has not paid the general contractor." [Doc. 77] at 4 (quoting *Sunworks*, 695 F.2d at 458). Yet, *Sunworks* simply made this statement when acknowledging that New Mexico law recognizes the unjust-enrichment cause of action. *See Sunworks*, 695 F.2d at 458. It did not hold that, if the subcontractor lost its lien and the owner did not pay the general contractor, then the subcontractor may bring both a breach-of-contract claim and an unjust-enrichment claim. Rather, the Tenth Circuit acknowledged that, when no lien existed and there was no remedy against the party with which Sunworks was in privity of contract, Sunworks could pursue a claim for unjust enrichment. *See id.* Like *Ontiveros*, the Tenth Circuit merely analyzed whether the property owner paid the general contractor when discussing the merits of an unjust-enrichment claim, not when delineating the circumstances under which such a claim may be brought.

Panhandle's remaining cases do not stand for the proposition that a subcontractor may bring both a breach-of-contract and unjust-enrichment claim when the subcontractor loses its lien and the property owner fails to pay the general contractor. Panhandle cites *Hydro Conduit Corp. v. Kemble*, 1990-NMSC-061, ¶ 10, 110 N.M. 173, to argue that a subcontractor cannot maintain a lawsuit against a property owner when that owner has paid the general contractor for the services supplied by the subcontractor. [Doc. 77] at 4–5. The Court agrees: The subcontractor cannot maintain such a suit because, by paying for the services rendered, the property owner was not unjustly enriched. *See Ontiveros*, 2000-NMCA-051, ¶ 17. This argument does not concern what claims a subcontractor may simultaneously bring. *Hydro Conduit Corp.* states that a subcontractor may attempt to recover against the general contractor when "the subcontractor's contract right . . . against the general . . . contractor . . . is inadequate, as it will be when the [general] contractor is

insolvent." *Hydro Conduit Corp.*, 1990-NMSC-061, ¶ 9 (quoting 2 G. Palmer, *The Law of Restitution* § 10.7(b) 423 (1978)). Even in *Hydro Conduit Corp.*, the subcontractor could not pursue a remedy against the general contractor because the latter was defunct and its principal officer insolvent. *Id.* ¶ 3. *Hydro Conduit Corp.* again emphasizes that the plaintiff may only recover in unjust-enrichment when no adequate legal remedy governs the services at issue.[4]

Analyzing many of the same cases relied upon by Panhandle, in *Abraham v. WPX Energy Production, LLC*, the Honorable James O. Browning, United States District Judge, concluded that, when a plaintiff sued a defendant for unjust enrichment when the parties were not in privity of contract, "the Supreme Court of New Mexico would require a plaintiff to allege that there is something preventing his recovery on the contract claim." *Abraham*, 20 F. Supp. 3d at 1284. Based on the above analysis, the Court agrees. Panhandle's argument conflates the merits of an unjust-enrichment claim with the circumstances under which a party may assert one. Panhandle's analysis of *Ontiveros*, *Sunworks*, and *Hydro Conduit Corp.* focuses on the former analysis, which is not at issue in this Motion. To the extent those cases inform the instant matter, they indicate

---

[4] Panhandle also cites *Terry v. Pipkin*, 1959-NMSC-049, ¶ 19, 66 N.M. 4, to argue that a party who has lost his mechanic's lien on a property may recover under quantum meruit to recover the value of the services performed. [Doc. 77] at 3. For the reasons explained above, the Court does not find *Terry* applicable to the instant Motion. The Court agrees that, under certain circumstances, a party who has lost its lien on property may recover under quantum meruit for the value of the services performed. That does not, however, affect whether a party may bring such a claim absent a showing that it lacks a legal remedy. Additionally, *Terry* focused not on the circumstances under which a party may bring both a breach-of-contract claim and an unjust-enrichment claim. Rather, it focused on whether a claim for quantum meruit was sufficiently different from one for breach of contract such that a prior adverse proceeding based on the breach-of-contract claim precluded the plaintiff from bringing a quantum meruit claim under res judicata principles. *See Terry*, 1959-NMSC-049, ¶¶ 5, 8–11. In holding that the two claims were sufficiently different, *see id.*, the New Mexico Supreme Court mentioned that the plaintiff may pursue an action on quantum meruit after he lost his lien, *id.* ¶ 19. Yet, in *Terry*, the plaintiff had already suffered an adverse judgment on his contract claim and, therefore, lacked a legal remedy. *See id.* ¶ 18. Therefore, *Terry* is largely irrelevant to the instant Motion and, to the extent it does inform the instant Motion, it supports 3Bear's position that Panhandle must first show that it lacked a legal remedy before suing for unjust enrichment.

that a subcontractor which loses its lien on the property *and* which cannot recover against a bankrupt contractor may bring an action in unjust-enrichment against the property owner. It may do so because it has effectively lost its legal remedy against the general contractor.

The Court therefore rejects Panhandle's argument that a genuine issue of material fact exists over whether 3Bear paid Big Chief. Whether the property owner paid the general contractor is immaterial to determining when a subcontractor may bring a facially valid unjust-enrichment claim. Rather, Panhandle may avoid summary judgment only by showing that it lacks a legal remedy against Big Chief. *See Elliott Indus. Ltd. P'ship*, 407 F.3d at 1117. Panhandle neither makes such an allegation nor points to the parts of the record suggesting that it lacks an adequate legal remedy against Big Chief. Therefore, the Court will grant 3Bear's Motion for Summary Judgment. *See Steadfast Ins. Co.*, 2015 WL 12803775, at *4 ("Steadfast has not pleaded that anything is preventing it from pursuing a contract remedy against Legacy . . . indeed, Steadfast brings just such a claim in Count I. Simply put, in the absence of any allegations to the contrary, Steadfast has a complete and adequate remedy at law—a contract claim against Legacy. Under these circumstances, its unjust[-]enrichment claim against Chesapeake must fail."); *cf. Armijo*, 285 F. Supp. 3d at 1209 ("Plaintiff had [pleaded] neither a contract claim nor facts to demonstrate that something has prevented her from pursuing a contract remedy against FedEx . . . . It follows, then, that Plaintiff's unjust[-]enrichment claim against FedEx must fail under New Mexico law.").

## CONCLUSION

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Third-Party Defendant 3Bear Delaware Operating-NM, LLC's Motion for Summary Judgment [Doc. 67] is **GRANTED**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR
United States Magistrate Judge
Presiding by Consent**